STATE OF FLORIDA, on the Relation of R. H. BRADFORD, *Relator*, v. FRANK STOUTAMIRE, as Sheriff of Leon County, Florida, *Respondent*.

En Banc.

Opinion filed September 27, 1929.

*Cooper, Knight, Adair, Cooper & Osborne* and *Martin H. Long,* for Relator;

*Fred H. Davis,* Attorney General, and *H. E. Carter,* Assistant, for Defendant in Error.

PER CURIAM.—R. H. Bradford, being arrested under an affidavit charging "that on the 28th day of August, A. D. 1929, in the county aforesaid one, R. H. Bradford, did then and there unlawfully engage in and do business as a wholesale dealer in gasoline in the County of Leon and State of Florida, without having paid the license tax and without procuring the State and county licenses required by Sections 896 and 804 of the Revised General Statutes of Florida of 1920, for the year ending September 30th, 1929; contrary to the statute in such case made and provided, and against the peace and dignity of the State of Florida," sued out writ of *habeas corpus.*

The State contends that Section 896, together with Section 804, Revised General Statutes of Florida, is in full force and effect and that the relator being engaged in the business of a wholesale dealer in gasoline is required to pay the tax provided by these sections of the statutes. Section 896 reads as follows:

"Gasoline Dealers.—Gasoline, wholesale dealers in, shall pay a license tax of Ten Dollars in each county."

Section 804 reads as follows:

"County Licenses Levied; City Licenses, Amount.—
That in every case, not otherwise provided in this chap-
ter, a county license tax of fifty per cent of the State
license tax be, and the same is hereby levied and im-
posed upon any business, profession or occupation men-
tioned in this chapter and the tax collector of each
county in this State is hereby authorized and directed
to collect such county license tax when the business,
profession or occupation is engaged in, conducted or
carried on in any such county and all of the penalties
prescribed by this chapter for the nonpayment of
license taxes or for doing business without a license
shall extend to and apply to county license taxes
whether imposed by this chapter or any law of the
State of Florida. Provided, That incorporated cities
and towns may impose such further license taxes of the
same kind upon the same subjects as they may deem
proper, unless otherwise provided in this chapter, but
the license taxes so imposed shall not exceed fifty per
cent of the State license tax except as otherwise
authorized by law."

Section 896 was originally Section 25 of Chapter 6421 of
the Laws of Florida, 1913, which was what is generally
known as the General Occupation License Tax Act. It is a
matter of common knowledge of which the Court may take
judicial cognizance that in 1913 the modern filling station,
which meets the view at almost every turn today, was en-
tirely unknown; that the quantity of gasoline sold was of
little consequence; that the retail dealer in gasoline was
engaged in such business more as an accommodation to the
few people who used that commodity than because of any
large profits expected to himself. The commodity was often
found for sale in grocery stores kept in large tanks, along-
side of one of like character in which kerosene was kept for

sale. The demand for this commodity grew. In 1921 the Legislature, evidently realizing the demand for this particular commodity, and realizing that by special legislation in regard thereto it could be made the source of large income to the State, dealt with it in a special Act of the Legislature, the same being Chapter 8411.

The relator maintains that Chapter 8411 repealed Sections 896 and 804.

It appears clear to us that it was the legislative intent to make Chapter 8411 the entire authority authorizing collection of license taxes upon wholesale dealers in gasoline and other like products of petroleum in this State and that the provisions of Section 896 and 804 were repealed by this legislative act. The title of the Act indicates this intention. The title is:

"An Act Imposing License Taxes upon Dealers in Gasoline or Other like Products of Petroleum; Providing for Reports of Sales of Such Commodities to the Comptroller; Providing for the Disposition of the Moneys Derived from such Tax and Fixing a Penalty for the Violations Hereof."

Section 1 of the Act provides as follows:

"Every dealer in gasoline, or other like products of petroleum, under whatever name designated, used for illuminating, heating, cooking or power purposes in this State shall pay a license tax of Five ($5.00) Dollars for each place of business and in addition thereto one cent per gallon for every gallon of gasoline or other like products of petroleum sold by him for the purposes aforesaid. Said license tax of Five ($5.00) Dollars shall be paid to the Comptroller who shall issue to the licensee a receipt or certificate evidencing the payment of the said fees.

Said receipt or certificate shall be posted or displayed and so kept at all times open to the public view at the place of business for which the same is issued. The license tax of one cent per gallon on gasoline, or other like products of petroleum shall be paid to the Comptroller monthly in the following manner: On or before the 5th day of each month the dealer shall report under oath to the Comptroller the number of gallons of such products sold by him during the preceding month and shall at the same time pay to the Comptroller the amount of license tax above mentioned.''

It will be observed that this section requires the payment of a license tax of $5.00 for each place of business, whereas Section 896 provided for the payment of a license tax of $10.00 in each county. It was a matter of common knowledge, of which the Court may take judicial notice, that wholesale dealers in gasoline at that time, 1921, had their distributing stations at different places in counties which could be reached by railroad.

Section 7, Chapter 8411, defines the term ''dealer'' as used in the Act, as follows:

''The term 'dealer' as used herein or in any proceeding under this Act shall be deemed and taken to mean any person, firm, corporation, or association engaged in the business of selling in this State at wholesale such of the products covered by this Act as have been divested of their interstate character and the license tax hereby imposed upon the quantity of such product sold in this State shall be collected only once and that upon the first sale after the same has lost its interstate character.''

Now, to further evidence the legislative intent to substitute the $5.00 license fee for each place of business in lieu of the $10.00 license fee for each county, Section 8 of the Act provided as follows:

"This Act, as to the Five ($5.00) Dollars license tax shall take effect October 1st, 1921. As to the license tax based upon the quantity of such products sold, it shall take effect and be operative on and after June 20th, 1921."

If the legislative intent had been to add the $5.00 license tax for each place of business to the $10.00 license tax for each county, there would have been no reason for this provision of the statute, and the entire tax authorized by the Act might well have become effective June 20th, 1921, but this provision being inserted in the Act shows that the Legislature recognized the fact that the license tax theretofore provided by Section 896 had been paid for the current year and that the dealer was entitled to the privilege of continuing business under the payment of that tax alone until the expiration of the tax year and, thereupon, would be required to pay the license tax under the provisions of Chapter 8411.

It was found that Chapter 8411 did not provide for all contingencies and emergencies and, therefore, the Legislature of 1923 by Chapter 9120 passed a more comprehensive gasoline tax Act. It will be observed that Chapter 9120 contained the following provision:

"The license tax of Five ($5.00) Dollars for the State shall be due and payable October 1st of each year and it shall be unlawful for any person, firm, corporation or association to engage in or carry on

the business of a dealer in such products without first having obtained the license provided for herein.''

And Section 7, defining ''dealer'' says:

''The term 'dealer' as used herein or in any proceeding under this Act shall be deemed and taken to mean any person, firm, corporation or association engaged in the business of selling in this State such of the products covered by this Act as have been divested of their interstate character and the license tax hereby imposed upon the quantity of such product sold in this State shall be collected only once and that upon the first sale after the same has lost its interstate character.''

This latter provision extended the operation of the law to cover both wholesale and retail dealers, whereas the preceding statutes had only applied to wholesale dealers and we may assume the change was made because of the fact that large retail dealers had developed the practice of procuring their supply by direct interstate shipments and disposing of the same at retail without being liable for the payment of the wholesale license tax.

What may be termed the gasoline tax scheme, initiated by Chapter 8411 and developed further by Chapter 9120, has been carried forward and further developed by each succeeding session of the Florida Legislature.

It is a well settled rule of statutory construction that where a statute covers the whole subject matter of an earlier Act and it is evident that it was intended to be a revision of, or a substitute for, the earlier Act, although it contains no express words to that effect, it operates as the repeal of the earlier Act to the extent that its provisions are revised and supplied. 25 R. C. L. 915. U. S.

v. Tynen, 11 Wall. 88, 20 Law Ed. 153; Murdock v. Memphis, 20 Wall. 590, 22 Law Ed. 429; Hyde v. Ruble, 104 U. S. 407, 26 Law Ed. 823; Ayers v. Watson 113 U. S. 594; 28 Law Ed. 1093; Jacksonville v. Bowdoin, 67 Fla. 181, 64 So. R. 769.

Both the $5.00 license tax and the so-called gallonage tax required by Chapter 8411 have been construed by this Court not to be separate taxes, but to be both license taxes. See Amos v. Gunn, 84 Fla. 285, 94 So. R. 601. We have considered the case of the Pullman Co. v. Knott, Comptroller, 70 Fla. 9, 69 So. R. 703, and also the case of Afro-American Industrial and Benefit Association of the U. S. v. State, 61 Fla. 85, 54 So. R. 383, and we do not think that the opinion in either case supports the contention of the respondent. The statutes involved in each of those cases indicate clearly the legislative intent to impose an additional license tax supplementing the tax already imposed by previous statutes. Such intent is not evidenced by the statutes here under consideration, but, on the contrary, the gasoline tax Acts of 1921 and those subsequent thereto prior to the Acts of 1929, each indicates the legislative intent to have each successive Act cover the entire subject matter and supersede all former Acts except Chapter 12012 Acts of 1927 and in this Act we find a clear expression of the legislative intent in this regard. Section 1 of this Act provides in effect that in addition to all other taxes required by Chapter 10025 amending Chapter 9120, a tax was levied

"for a period of two years beginning July 1st, 1927. That two-thirds of said amount so collected shall be placed into a special fund to be known as a 'Public Free School Fund' of the State as hereinafter provided. That one-third of said amount so collected shall be placed into a special fund to be known as a Per-

manent Building Fund for the State Institutions of Higher Learning, Experiment Stations and other Institutions under the management of the State Board of Control and to be expended as hereinafter provided.''

The provisions of this section show that the legislative construction was that all the authority existing in this State for the imposing of license taxes upon the sale of gasoline was embraced in Chapter 9120 Acts of 1923, as amended by Chapter 10025 Acts of 1925, and it is evident beyond question that Chapter 9120 Acts of 1923 superseded Chapter 8411 Acts of 1921.

The relator should be discharged from custody with his cost in this behalf expended and it is so ordered.

TERRELL, C. J., AND WHITFIELD, ELLIS, STRUM AND BROWN, J. J., concur.

WHITFIELD, P. J., concurring.

Chapter 6421, Acts 1913, entitled ''An Act imposing licenses and other taxes,'' etc., provided that ''wholesale dealers in gasoline shall pay a license tax of ten dollars in each county;'' ''all licenses shall expire on the first day of October,'' Sections 805, 896, Rev. Gen. Stats. 1920; Sections 1052, 1152, Comp. Gen. Laws 1927.

Chapter 8411, Acts 1921, entitled ''An Act imposing license taxes upon dealers in gasoline,'' etc., provides that ''Every dealer in gasoline, or other like products of petroleum * * * shall pay a license tax of five ($5.00) Dollars for each place of business,'' etc. ''The term 'dealer' as used herein * * * shall be deemed and taken to mean any person, firm, corporation or association engaged in the business of selling in this State at wholesale,'' etc. The provisions as to such license tax ''shall take effect October

1st, 1921." "All laws and parts of laws in conflict herewith are hereby repealed."

Chapter 8411, Acts 1921, being a later enactment covering the subject of "license taxes upon dealers in gasoline," expressly defines "dealer" as one engaged in the business of selling at wholesale, imposes a specific "license tax" upon "every dealer in gasoline," provides that "the license tax of Five ($5.00) Dollars shall be due and payable October 1st, of each year," and repeals all laws in conflict with its provisions. The provision of Chapter 6421, Acts 1913, Section 896, Rev. Gen. Stats., Sec. 1152, Comp. Gen. Laws 1927, that "wholesale dealers in gasoline shall pay a license tax of ten dollars in each county" was repealed by implication by Chapter 8411, since it is in conflict with the quoted provisions of Chapter 8411, Acts 1921, Sections 1153, et seq., Comp. Gen. Laws 1927, covering the same subject. See Sec. 10 Chapter 8411, Acts of 1921.

Chapter 8411, Acts 1921, is quite different from Chapter 11336, Acts of 1925, and Chapter 12223, Acts of 1927, considered in State ex rel Stewart v. Karel, Sheriff, 94 Fla. 1039, 114 So. R. 669. Chapter 5597, Acts 1907, considered in Afro-American etc. v. State, 61 Fla. 85, 54 So. R. 383, is unlike Chapter 8411, Acts 1921.

Legal conflict between the provisions of Chapter 6421, Acts 1913, contained in Section 896, Rev. Gen. Stats. 1920, Section 1154, Comp. Gen. Laws 1927, and Chapter 8411, Acts 1921, as amended by Chapter 9120, Acts 1923, Chapter 10025, Acts 1925, Chapter 12037, Acts 1927, had not been adjudicated, and there being no express repeal or specific amendment of it, the compilers were not authorized to omit the enactment of 1913, Section 896, Rev. Gen. Stats. 1920, from the Comp. Gen. Laws 1927.

Brown, J., concurs.