Mr. James B. Loper Counsel for the Board of Trustees Orlando Firefighters Pension Fund Magdalene Center 15438 North Florida Avenue, Suite 101 Tampa, Florida 33613
Dear Mr. Loper:
On behalf of the Board of Trustees of the Orlando Firefighters Pension Fund, you ask the following questions:
1. May the City of Orlando amend its charter to authorize the Board of Trustees of the Orlando Firefighters Pension Fund to make investments beyond the parameters set forth in section 175.071(1), Florida Statutes?
2. May the Board of Trustees of the Orlando Firefighters Pension Fund adopt investment policies pursuant to section 112.661, Florida Statutes, authorizing investments set forth in section 215.47(1)-(8), (10) and (16), Florida Statutes, without jeopardizing the receipt of funds from the Police Officers' and Firefighters' Premium Tax Trust Fund?
3. May provisions of the Orlando Firefighters Pension Fund be amended by special act of the Legislature to allow the board of trustees to have investment powers broader than those set forth in section 175.071, Florida Statutes, without jeopardizing receipt of funds from the Police Officers' and Firefighters' Premium Tax Trust Fund?
Question One
The Orlando Firefighters Pension Fund was created in 1945 by special act of the Legislature.[1] A board of trustees for the fund is empowered to invest the pension as prescribed in the special act creating the fund.[2]
Most recently, the special act was amended by the Legislature to provide:
"(b) The legislative body of the City of Orlando is authorized to amend the pension plan to the limited extent necessary to comply with the minimum standards and minimum benefits levels required by Chapter 175, Florida Statutes, in order to allow the plan to receive funds from the Police and Firefighters' Premium Tax Trust Fund, but must obtain prior agreement of the members and their collective bargaining agent, if any, should such required amendments change any plan benefits."[3]
The plain language of the act authorizes the City of Orlando to amend the city's firefighter pension plan, but only to the "limited" extent necessary to comply with the minimum standards and minimum benefits levels prescribed in Chapter 175, Florida Statutes, to qualify for receipt of funds from the Police Officers' and Firefighters' Premium Tax Trust Fund. Moreover, should such changes affect any plan benefits, the legislative body of the city must obtain prior approval from the members of the plan and their collective bargaining agent. I find no further authority in the special act that contemplates an expansion of the board's investment powers.
Chapter 175, Florida Statutes, establishes minimum benefits and minimum standards for the operation and funding for all municipal and special district firefighters' pension plans existing now or hereafter under the chapter, including chapter plans and local law plans.[4] The statute provides that "[t]he minimum benefits and minimum standards set forth in this chapter may not be diminished by local charter, ordinance, or resolution or by special act of the Legislature, nor may the minimum benefits or minimum standards be reduced or offset by any other local, state, or federal law that may include firefighters in its operation, except as provided under s. 112.65."[5]
Section 175.071, Florida Statutes, prescribes the general powers and duties of the board of trustees for any municipality, special fire control district, chapter plan, local law municipality, local law special fire control district, or local law plan under Chapter 175, Florida Statutes. The section prescribes investment options, such as time or savings accounts, bonds, stocks, and obligations of the United States or obligations guaranteed as to interest and principal by the United States. There is a specific restriction, however, that a board of trustees
"shall not invest more than 5 percent of its assets in the common stock or capital stock of any one issuing company, nor shall the aggregate investment in any one issuing company exceed 5 percent of the outstanding stock of that company or the aggregate of its investments under this subparagraph at cost exceed 50 percent of the assets of the fund."[6]
In the event a municipality has a duly enacted pension plan pursuant to and in compliance with section 175.351, Florida Statutes,[7] and the board of trustees desires to vary the investment procedures prescribed in section 175.071(1), Florida Statutes, section 175.071(1)(b)4.b. states:
"[T]he trustees of such plan shall request a variance of the investment procedures as outlined herein only through a municipal ordinance, special act of the Legislature, or resolution by the governing body of the special fire control district; where a special act, or a municipality by ordinance adopted prior to July 1, 1998, permits a greater than 50-percent equity investment, such municipality shall not be required to comply with the aggregate equity investment provisions of this paragraph."
Thus, a board of trustees may seek to vary its investment procedures through a municipal ordinance, special act of the Legislature, or resolution by the governing body of the special fire control district. In this instance, however, a special act of the Legislature, with limitations upon the authority of the board of trustees to alter its investment procedures, controls the operation of the city's firefighters' pension plan.
In previous opinions construing the Municipal Home Rule Powers Act (Part I, Chapter 166, Florida Statutes), this office has noted that provisions of municipal charters and special acts that were in effect on July 1, 1973, and which constituted limitations on municipal power or which pertained exclusively to the power or jurisdiction of a municipality, were nullified and repealed or converted into ordinances.[8] Section166.021(4), Florida Statutes, however, states "nothing in this act shall be construed to permit any changes in a special law or municipal charter which affect . . . any rights of municipal employees, without approval by referendum of the electors as provided in s. 166.031." Thus, any special law or charter provision relating to rights of municipal employees would be unaffected by the Municipal Home Rule Powers Act, and any amendment or modification of such special act or charter provision would require referendum approval as prescribed in section 166.031, Florida Statutes. [9] This office has previously found that a pension plan is a right of a municipal employee.[10]
As noted above, however, the latest amendment to the special act creating the city's firefighters' pension fund is a legislative enactment limiting the authority of the governing body of the City of Orlando to amend the firefighters' pension plan only to ensure compliance with the minimum requirements of Chapter 175, Florida Statutes. A legislative directive as to the manner in which a thing is to be accomplished or done is, in effect, a prohibition against its being done in any other manner.[11]
Any amendment to this legislative directive would have to be made by the Legislature and could not be effected by a municipal ordinance.[12]
Accordingly, it is my opinion that an amendment of the special act relating to the Orlando Firefighters' Pension Fund to broaden the investment authority of the board of trustees of the fund would need to be addressed by special act of the Legislature and not by ordinance enacted by the city's governing body.
Question Two
Section 175.351, Florida Statutes, provides:
"[I]n order for municipalities and special fire control districts with their own pension plans for firefighters, or for firefighters and police officers, where included, to participate in the distribution of the tax fund established pursuant to s. 175.101, local law plans must meet the minimum benefits and minimum standards set forth in this chapter."
As discussed in Question One, the only manner in which the investment policies of the board of trustees may be amended beyond that presently authorized in section 175.071, Florida Statutes, and section 6, Chapter 2000-448, Laws of Florida (2000), is by special act of the Legislature. Moreover, the express language of the most recent amendment to the special act clearly limits any changes to the pension fund by the governing body of the city to those that will ensure receipt of funds from the Police Officers' and Firefighters' Premium Tax Trust Fund.
I would note that the Division of Retirement in the Department of Management Services is responsible for the daily oversight and monitoring for actuarial soundness of the firefighters' pension plans established under Chapter 175, Florida Statutes. The division receives and holds the premium tax moneys and is responsible "upon determining compliance with the provisions of this chapter, for disbursing those moneys to the firefighters' pension plans."[13] Ultimately therefore, it is the Division of Retirement that must make the determination of whether an expansion of the investment policies of a particular board of trustees would jeopardize the receipt of trust fund moneys by a municipality.
Question Three
It is well settled that a legislature may not bind the hands of future legislatures by prohibiting amendments to statutory law.[14] However, in Part VII, Chapter 112, Florida Statutes, the Legislature has provided for the actuarial soundness of all retirement systems for public employees that are funded in whole or in part by public funds.[15]
Section 112.62, Florida Statutes, states that "[t]he provisions of this part supplement and, to the extent there are conflicts, prevail over the provisions of existing laws and local ordinances relating to such retirement systems and plans." Moreover, section 112.67, Florida Statutes, prohibits any special laws or general laws of local application in conflict with the provisions of the requirements of Part VII, Chapter 112, Florida Statutes, unless passed by a three-fifths majority vote of each house of the Legislature.[16]
Thus, to the extent that a special act or general law of local application may seek to expand the investment authority of the board of trustees of a pension fund or retirement system in such a manner that it would conflict with the provisions in Part VII, Chapter 112, Florida Statutes, passage by a three-fifths majority would be required.
Sincerely,
Charlie Crist Attorney General
CC/tls
[1] Chapter 23444, Laws of Florida (1945).
[2] See, s. 5, Ch. 89-459, Laws of Florida (1989), amending Ch. 23444, Laws of Florida, 1945, as amended, stating that the board of trustees:
"[S]hall invest said fund, except for deposits in banks as hereinafter mentioned, in the name of "The Board of Trustees of the Firefighters' Pension Fund" in interest bearing securities or obligations fully guaranteed by the government of the United States as to both principal and interest, or in such investments as are from time to time approved by the comptroller of the State of Florida for purchase by state franchised banks and banking facilities. Additionally, the board shall be authorized to invest said fund in real estate or interests in real estate wherever situated or common stocks, preferred stocks, and other types of equity instruments issued by corporations organized and existing under the laws of the United States or of the several states. . . Said board shall also be empowered to enter into an agreement, in its discretion, with a bank, trust company, savings and loan association, investment management company, or insurance company, authorized to do business in the State of Florida, for the investment, management and/or administration of pension funds and the payment of pensions as provided under the terms and conditions of chapter 23444, Laws of Florida, 1945, as amended. The said trustees shall deposit such part of said fund as they deem necessary to the efficient and practical operation and administration of this act in a banking institution in the City of Orlando, Florida, and said fund so deposited shall be secured by direct obligations of the government of the United States and such obligations shall be fully guaranteed, both as to principal and interest, by the government of the United States. The said trustees shall from time to time as necessary designate by order the depository or depositories for said fund and the assets thereof. Further, the board shall be and is hereby authorized to invest more than five (5) percent of its assets in the common or capital stock of any one issuing company, to invest in such a manner that the aggregate investment in any one issuing company exceeds five (5) percent of the outstanding capital stock of the company, and to invest more than thirty (30) percent of the fund's aggregate assets at cost in equity instruments; provided, however, that in order to so invest, the board shall first receive concurrence and recommendation therefor from an independent consultant professionally qualified to evaluate the performance of professional money managers, which consultant shall be retained by the board to review on an annual basis such performance."
[3] Section 6, Ch. 2000-448, Laws of Florida (2000), adding a new section 27 to Ch. 23444, Laws of Florida (1945).
[4] Section 175.021(2), Fla. Stat.
[5] Id. Section 112.65, Fla. Stat., prescribes limitations on the benefits that may be received by retirees.
[6] Section 175.071(1)(b)4.b., Fla. Stat.
[7] Section 175.351, Florida Statutes, sets forth the parameters for a municipality, special fire control district, local law municipality, local law special fire control district, or local law plan under Chapter 175 to participate in the distribution of the tax fund established in section 175.101, specifically stating that "local law plans must meet the minimum benefits and minimum standards set forth in this chapter."
[8] Ops. Att'y Gen. Fla. 74-371 (1974) and 75-176 (1975).
[9] See, Op. Att'y Gen. Fla. 92-35 (1992) (Jacksonville Police and Fire Pension plan may be altered by subsequent legislative act or as provided in section 166.021(4), Florida Statutes, by charter amendment with referendum approval). It should be noted that the special act creating the Jacksonville Police and Fire Pension plan, while limiting the board of trustees to the provisions in Chs. 175 and 185, Florida Statutes, specifically recognizes amendatory powers in s. 22.07, Charter for the City of Jacksonville, as amended by s. 2, Ch. 90-442, Laws of Fla., as follows:
"(1) The board of trustees shall have the sole and exclusive responsibility of administering the pension plan, but nothing herein shall empower the board to amend the provisions of the pension plan without the approval of the Jacksonville City Council. (2) No legislation shall be adopted by the Jacksonville City Council altering the terms of the pension fund without said legislation having first been referred to the board for its consideration and comment. The board may, as it deems necessary, recommend legislative changes and pass those recommendations on to the Jacksonville City Council for their consideration as ordinances. (3) The benefit plan administered by the board shall be as established by ordinance or charter provision, or by special act or general law of the Legislature, which shall be incorporated in this article by reference."
[10] Cf., Op. Att'y Gen. Fla. 73-427 (1973) defining "any rights of municipal employees" for purposes of s. 166.021(4) to include "anything conferred on municipal employees by the charter act or special act which is legally enforceable," and holding that a pension plan set out in a municipal charter is a "right" of municipal employees under Ch. 166.
[11] Alsop v. Pierce, 19 So.2d 799, 805-806 (Fla. 1944); Dobbs v. SeaIsle Hotel, 56 So.2d 341, 342 (Fla. 1952); Thayer v. State, 335 So.2d 815,817 (Fla. 1976). See also, City of Miami Beach v. Rocio Corporation,404 So.2d 1066, 1070 (Fla. 3d DCA 1981), appeal dismissed and petitionfor review denied, 408 So.2d 1092 (Fla. 1981) (while municipalities possess home rule powers, concurrent legislation enacted by municipalities may not conflict with a state law on the same subject; where municipal ordinance conflicts with state statute, ordinance will fail).
[12] See, Op. Att'y Gen. Fla. 81-7 (1981) (the power to amend or repeal the statutory law is a legislative power belonging to the state which is, by the terms of s. 1, Art. III, Fla. Const., vested in the State Legislature).
[13] Section 175.341(1), Fla. Stat.
[14] See, Neu v. Miami Herald Publishing Co., 462 So.2d 821 (Fla. 1985); Straughn v. Camp, 293 So.2d 689, 694 (Fla. 1974), appealdismissed, 419 U.S. 891, 95 S.Ct. 168, 42 L.Ed.2d 135 (1974); Tamiami Trail Tours, Inc. v. Lee, 194 So. 305 (Fla. 1940).
[15] See, s. 112.62, Fla. Stat., making Part VII, Ch. 112, Fla. Stat., supplemental and, to the extent there are conflicts, prevalent over the provisions of existing laws and local ordinances relating to public employee retirement systems or plans.
[16] See, s. 11(a)(21), Art. III, State Const., providing that there shall be no special law or general law of local application pertaining to: "any subject when prohibited by general law passed by a three-fifths vote of the membership of each house. Such law may be amended or repealed by like vote." Note 1, attendant to this constitutional provision, reflects that s. 112.67, Fla. Stat., was added pursuant to the authority of this paragraph.